UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASPHERE INTERNATIONAL , INC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ARAM VARDARYAN,<br><br>　　　　　　Defendant. | Case No.  5:12-cv-01536-HRL<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: RESCISSION CLAIM** |

## I.  INTRODUCTION

This case was tried to a jury over 10 days in September 2014.  Following the jury's verdict in favor of Plaintiff on six legal claims, including breach of contract, the Court issued a Memorandum of Decision on the two remaining equitable claims, rescission and constructive trust.  Dkt. No. 232 (Memorandum).  The Court found in Plaintiff's favor on the rescission claim and in Defendant's favor on the constructive trust claim.  *Id.*  The Court then invited Plaintiff to elect between the rescission remedy and breach of contract remedy, and submit a proposed judgment and findings of fact and conclusions of law.  *Id.* at 5.  Plaintiff elected the rescission remedy.  Dkt. No.  234.  After reviewing the parties' submissions, the Court requested further briefing on the jury's damages award.  Dkt. Nos. 242, 243.  Having reviewed Plaintiff's

submissions, and Defendants responses thereto, the Court now issues its findings of fact (Findings) and conclusions of law (Conclusions).[1]

## II. FINDINGS OF FACT

1. Viasphere is a California corporation with its principal place of business in Santa Clara, California.

2. Vardanyan is a current shareholder of Viasphere.

3. In April 2001 Vardanyan was appointed as General Director of Viasphere's wholly owned subsidiary, Viasphere Technopark, CJSC, an Armenian corporation. In 2002 Vardanyan was appointed to the Board of Directors (the "Board") of Viasphere and remained a director until February 2011.

4. On December 15, 2001, Viasphere and Vardanyan executed a document entitled "Viasphere International, Inc. 2001 Stock Option PLAN STOCK OPTION AGREEMENT-EARLY EXERCISE" (the "First Stock Option Agreement"). *See* Trial Ex. 5.1-5.6.

5. Pursuant to the First Stock Option Agreement, Viasphere agreed to grant Vardanyan an option to purchase 1,000,000 shares of Viasphere's common stock (the "First Option"). In exchange for the grant of the First Option, Vardanyan to work full time and agreed to pay Viasphere the nominal exercise price per share of $0.001, for a total exercise price of $1,000.00. The effective Grant Date of the options was April 5, 2001. *See* Trial Ex. 5.1.

6. The First Stock Option Agreement provides in relevant part:

<u>Vesting Schedule:</u>

This Option will be exercisable immediately, in whole or in part, conditioned upon Optionee entering into employment of the Company as a full time employee or entering into specific agreement to provide services.

*See* Trial Ex. 5.1.

---

[1] The court tried to avoid commingling Findings with Conclusions. However, if any Conclusion has been inadvertently labeled as a Finding (or vice versa), it should be considered in its true light regardless of the label on it.

7.  On November 2, 2002, Viasphere and Vardanyan executed a second document entitled "Viasphere International, Inc. 2001 Stock Option PLAN STOCK OPTION AGREEMENT-EARLY EXERCISE" (the "Second Stock Option Agreement"). *See* Trial Ex. 6.1-6.6.

8.  Pursuant to the Second Stock Option agreement, Viasphere agreed to grant Vardanyan a second option to purchase 713,000 shares of Viasphere's common stock (the "Second Option"). In exchange for the grant of the Second Option, Vardanyan reaffirmed his obligation to remain a full time employee and again agreed to pay Viasphere the nominal exercise price of $0.001 per share, for a total exercise price of $713.00. *See* Trial Ex. 6.1. At this time Vardanyan continued to be a member of Viasphere's Board of Directors.

9.  The Second Stock Option Agreement provides in relevant part:

> Vesting Schedule:
>
> This Option will be exercisable immediately, in whole or in part, conditioned upon Optionee entering into employment of the Company as a full time employee or entering into specific agreement to provide services.

*See* Trial Ex. 6.1.

10. On or about October 24, 2004, Vardanyan exercised the First and the Second Options, purchasing 1,713,000 shares of common stock from Viasphere in exchange for payment to Viasphere in the amount of $1,713.00. *See* Trial Exs. 5.7-5.10, 6.7-6.10.

11. In exercising the First and the Second Options, Vardanyan was required to execute and deliver to Viasphere an "Exercise Notice" which contains the following provision:

> Optionee's Representations. The Optionee expressly acknowledges that the Optionee has received, thoroughly read, and completely understood the Plan and the Option Agreement and agrees to abide by and be bound by their respective terms and conditions.

*See* Trial Exs. 5.7-5.10, 6.7-6.10.

12. As a result of the October 24, 2004 exercise, Vardanyan acquired 1,713,000 shares of Viasphere common stock.

13. Commencing in 2004, prior to his October 24, 2004 exercise of the Stock Option Agreements, Vardanyan began working on various projects unrelated to Viasphere, including, but not limited to scrap metal, diamonds and diamond processing equipment and RF amplifiers. *See* Trial Exs. 41(A)-(Q). Vardanyan never apprised Viasphere of his involvement in these other ventures and Viasphere did not learn of this fact until February 2011.

14. Furthermore, in 2004, Vardanyan was utilizing Viasphere personnel and resources in the final stages of the two year construction of Vardanyan's personal residence in Armenia. Vardanyan never apprised Viasphere that Vardanyan was utilizing Viasphere personnel and resources in this manner and Viasphere did not learn of this fact until February 2011.

15. Soon after exercising the First and the Second Options, Vardanyan began working for Barva, LLC ("Barva"), a company that Vardanyan started, and which is located in Talin, Armenia.

16. At the time Vardanyan started, and commenced working for Barva, Vardanyan was still employed as the General Director of the Technopark, and continued as a member of Viasphere's Board of Directors.

17. At the time Vardanyan started, and commenced working for Barva, Vardanyan never apprised any of Viasphere's principals, or members of the Board, that he was working for Barva while still employed as the General Director of the Technopark.

18. Viasphere did not learn of Barva's existence, let alone that Vardanyan was working for Barva, until February 2011.

19. Viasphere would not have entered into the First and the Second Stock Option Agreements if Viasphere had known that Vardanyan would not fulfill his contractual obligations to work as a full-time employee of Viasphere.

20. Viasphere would not have permitted Vardanyan to exercise the First and Second Options if Viasphere had known that Vardanyan would not fulfill his contractual obligations to work as a full-time employee of Viasphere.

21.     The jury trial on Viasphere's claims for Intentional Misrepresentation, Negligent Misrepresentation, Conversion, Breach of Fiduciary Duty, Breach of Implied Covenant of Good Faith and Fair Dealing and Breach of Contract concluded September 26, 2014. The jury found for Viasphere on each of the legal claims and awarded $72,500 in compensatory and $1,001,713 in punitive damages. *See* Dkt. No. 215.

22.     The verdict form contained no apportionment of the damages among the claims, and neither party requested a verdict form that apportioned damages. Dkt. No. 215.

23.     Viasphere's proposed verdict forms also never contained any apportionment of damages. Dkt. Nos. 127, 165, 208.

24.     Following the jury trial, the Court ordered the parties to submit briefs on the equitable claims for rescission and constructive trust. The parties submitted their initial briefs on October 24, 2014. Dkt. Nos. 226, 227. The parties submitted their respective responses on November 3, 2014. Dkt. Nos. 230, 231.

25.     Viasphere did not seek punitive damages in connection with the rescission claim.

26.     On February 4, 2015, the Court issued its Memorandum of Decision on Equitable Claims for Relief, finding in favor of Vardanyan on the claim for constructive trust and in favor of Viasphere on the claim for rescission. Viasphere was to indicate its election between damages and rescission by filing its proposed judgment within 14 days of the Order. Dkt. No. 232.

27.     In the [Proposed] Judgment filed by Viasphere on February 18, 2015, Viasphere elected to rescind the Stock Option Agreements. Dkt. No. 243.

28.     On March 31, 2015, the Court held a status conference on the issue of apportionment of damages. Dkt. No. 241. At the status conference, Viasphere again confirmed that it elected rescission of the contract over contract damages. The parties submitted briefing related to apportionment. Dkt. Nos. 242, 243.

### III. CONCLUSIONS OF LAW

1.      On its Eighth Claim of Rescission, Viasphere has alleged rescission of the Stock

1  Option Agreements attached to the First Amended Complaint. Dkt. No. 15. Rescission is a
2  remedy that disaffirms the contract. *See* Civil Code §1688, *et seq.* The remedy assumes the
3  contract was properly formed, but effectively extinguishes the contract ab initio as though it never
4  came into existence, and its terms cease to be enforceable. *Id.* The Court has found in favor of
5  Viasphere on its claim for rescission. Dkt. No. 232.

6  2. "When one party has been injured by a breach of contract and she either lacks the
7  ability or the desire to keep the contract alive, she can choose between two different remedies.
8  She can treat the contract as rescinded and recover damages resulting from the rescission. Or she
9  can treat the contract as repudiated by the other party and recover damages to which she would
10 have been entitled had the other party not breached the contract or prevented her performance. An
11 action for rescission is based on the disaffirmance of the contract and an action for damages for
12 breach of contract is based on its affirmance." *Akin v. Certain Underwriters at Lloyd's London*,
13 140 Cal. App. 4th 291, 287 (2006)(internal citations omitted).

14 3. In the [Proposed] Judgment filed by Viasphere on February 18, 2015, Viasphere
15 elected to rescind the Stock Option Agreements. Dkt. No. 234. "An action for rescission and an
16 action for breach of contract are alternative remedies. The election of one bars recovery under the
17 other." *Akin,* 140 Cal. App. 4th at 287. Viasphere therefore cannot recover damages in
18 connection with the breach of the Stock Option Agreements.

19 4. The jury awarded compensatory damages of $72,500. This amount was not
20 allocated amongst Viasphere's claims of (1) intentional misrepresentation, (2) negligent
21 misrepresentation, (3) conversion, (4) breach of fiduciary duty, (5) breach of the implied covenant
22 of good faith and fair dealing, and (6) breach of contract. Dkt. No. 215.

23 5. The elements for a breach of contract action under California law are: (1) the
24 existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's
25 breach, and (4) damages to plaintiff as a result of the breach. *See CDF Firefighters v. Maldonado*,
26 158 Cal. App. 4th 1226, 1239 (2008).

United States District Court
Northern District of California

6. Damages are also an element of Viasphere's claims for (1) intentional misrepresentation, (2) negligent misrepresentation, (3) conversion, (4) breach of fiduciary duty, and (5) breach of the implied covenant of good faith and fair dealing. *See* Dkt. No. 216 (Jury Instructions).

7. Because damages are an element of each claim submitted to the jury, and the jury found in favor of Viasphere on each claim, the compensatory damages award must represent damages on each claim.

8. As Viasphere admits, "it is not even clear whether the compensatory damages awarded are based on Viasphere's tort claims or contract claims, or both." Dkt. No. 230 at 4. However, the Court must remove any damages that were awarded for the breach of contract claim in order for Viasphere to rescind the contract. *Akin,* 140 Cal. App. 4th at 287. Because there is no principled basis for allocating the damages award across the different claims, Viasphere is bound by its use of a general damages award on the jury verdict. The Court cannot assume that the jury awarded the full amount of damages on the tort claims, especially where the contract claim requires a finding of damage.

9. Viasphere argues that *Amerigraphics, Inc. v. Mercury Cas. Co.*, 182 Cal. App. 4th 1538, 1557-58 (2010) supports construing the jury verdict as awarding the full amount of damages on the non-contract claims. The Court does not agree because *Amerigraphics* involved a question of whether the jury awarded damages that could support a later award of punitive damages. *Amerigraphics* did not address a situation where some portion of a general damages award had to apportioned amongst different claims.

10. Similarly, cases applying the "general verdict rule" do not support awarding Viasphere the full amount of damages awarded by the jury. *See, e.g, Tavaglione v. Billings*, 4 Cal. 4th 1150 (1993) ("The 'general verdict rule' . . . provides that where several counts are tried, a general verdict will be sustained if any one count is supported by substantial evidence and is unaffected by error, despite possible insufficiency of evidence as to the remaining counts."). Here,

5:12-cv-01536-HRL
FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: RESCISSION CLAIM
7

there was no error in the jury's finding on liability on any of the counts, but Viasphere, by virtue of its election of remedies, cannot recover some undetermined amount of damages (i.e., contract damages), that were properly awarded by the jury.  Thus, the Court cannot rely on the assumption underlying the general verdict rule "that the jury found on the cause of action or theory which was supported by substantial evidence and as to which there was no error," in sustaining the damages award.  *Id.*  Instead, the Court must assume that the jury found damages on each claim, as required by the jury instruction.

11. Accordingly, the Court does not apportion the verdict amongst the different claims or assume that the entire amount of damages was based on the tort claims, and no actual or compensatory damages are awarded.

12. In California actual damages are an absolute predicate for an award of exemplary or punitive damages. *See* Cal. Civ. Code § 3294; *Kizer v. Cnty. of San Mateo*, 53 Cal. 3d 139, 147, (1991), *as modified* (Mar. 28, 1991).  Here, as the Court does not award any actual damages, the Court also does not award any punitive damages.

## IV. ORDER

Based on the findings above, the Court orders that the Stock Option Agreements are hereby rescinded.  Viasphere shall return to Vardanyan a total of $1,713.00 paid in consideration under the Stock Option Agreements.  Upon payment to Vardanyan, the 1,713,000 shares of Common Stock of Viasphere International, Inc. shall be cancelled in the books of the corporation.

**IT IS SO ORDERED**.

Dated: April 30, 2015

_____
Howard R. Lloyd
United States Magistrate Judge

5:12-cv-01536-HRL Notice has been electronically mailed to:

Ara Aroustamian     ara@lawaa.com

Armen Shaghzo     as@shaghzolaw.com

Fenn C. Horton , III     fhorton@pahl-mccay.com, drinnert@pahl-mccay.com

Helene Anastasia Simvoulakis     hsimvoulakis@pahl-mccay.com, manaya@pahl-mccay.com

Sonia Sanjit Shah     sshah@pahl-mccay.com

Stephen Donald Pahl     spahl@pahl-mccay.com, tmeek@pahl-mccay.com

Varand Vartanian     Varand@lawaa.com