UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VIASPHERE INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ARAM VARDANYAN,<br><br>Defendant. | Case No. 5:12-cv-01536-HRL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART VARDANYAN'S MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Re: Dkt. No. 259 |

In this diversity action, Viasphere International, Inc. (Viasphere) sued Aram Vardanyan, alleging fraud, breach of fiduciary duty, and breach of contract. Viasphere claimed that Vardanyan (a shareholder and former director of Viasphere's Technopark complex in Armenia) used Viasphere's personnel and resources for his own personal interests and that he was also involved in other ventures that conflicted with his obligations to Viasphere.

The case proceeded to a 10-day, two-phase trial.[1] During trial, Vardanyan made Fed. R. Civ. P. 50(a) motions for judgment as a matter of law, arguing lack of sufficient evidence to support Viasphere's claims. Both motions were denied. The jury rendered a verdict in Viasphere's favor and against Vardanyan on six claims: intentional misrepresentation, negligent misrepresentation, conversion, breach of fiduciary duty, breach of contract, and breach of the

---

[1] All parties expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

1  implied covenant of good faith and fair dealing. Viasphere was awarded $72,500 in compensatory
2  damages, and the jury found that Vardanyan acted with oppression, fraud, or malice. (Dkt. 215).
3  The case immediately proceeded to a punitive damages phase, and Viasphere was awarded
4  $1,001,713 in punitive damages. (Dkt. 218).

5  After post-trial briefing, the court issued its memorandum of decision on the two
6  remaining equitable matters: Viasphere's request for imposition of a constructive trust and for
7  rescission based on fraud. (Dkt. 232). The court found in Vardanyan's favor on the request for
8  constructive trust and ruled in Viasphere's favor on rescission. Because rescission of a contract
9  and damages for breach of contract are alternate remedies, Viasphere was invited to choose
10 between the two. (Id.). Viasphere chose rescission.

11 At the court's direction, the parties then submitted further briefing on the jury's damages
12 award. The court determined that any damages awarded for the breach of contract claim must be
13 removed in order for Viasphere to rescind the contract. But because the contract and tort claims
14 were submitted to the jury on a general verdict form (submitted by Viasphere), the damages were
15 not allocated across the different claims. Finding no principled way to allocate the compensatory
16 damages award, the court did not apportion the verdict amongst Viasphere's different claims or
17 assume that the entire amount of damages was based on the tort claims alone. No compensatory
18 damages were awarded. And, the court therefore did not award any punitive damages. (Dkt. 244).
19 Judgment was entered accordingly. (Dkt. 245).

20 Pursuant to Fed. R. Civ. P. 59(e), Viasphere then moved to alter the judgment. It did not
21 seek to resurrect the jury's compensatory damages award. It asked that only the punitive damages
22 award be reinstated. This court granted that motion, essentially concluding that "Viasphere gave
23 up the right to a compensatory damages *award*; but Viasphere did not give up the punitive
24 damages award that was based on the jury's *finding* that Viasphere suffered actual damage as a
25 result of Vardanyan's tortious conduct." (Dkt. 257 at 3). An amended judgment was entered
26 accordingly. (Dkt. 258).

27 Vardanyan then filed the present renewed motion for judgment as a matter of law (JMOL)
28 pursuant to Fed. R. Civ. P. 50(b). Alternatively, he asks the court to remit damages or for a new

United States District Court
Northern District of California

trial. Viasphere opposes the motion. Upon consideration of the moving and responding papers, as well as the arguments presented at the motion hearing, this court grants Vardanyan's motion for JMOL in part and denies it in part; denies as moot his alternate request for remittitur; and conditionally grants his alternate request for a new trial pursuant to Fed. R. Civ. P. 50(c).

## LEGAL STANDARD

### A.     Motion for JMOL

Fed. R. Civ. P. 50(b) provides, in relevant part:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . .the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

On a renewed motion for JMOL following a jury verdict, the court may (1) allow judgment on the verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law. Id.

"'Judgment as a matter of law is appropriate when the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, which is contrary to the jury's verdict.'" Hagen v. City of Eugene, 736 F.3d 1251, 1256 (9th Cir. 2013) (quoting Omega Envtl., Inc. v. Gilbarco, Inc., 127 F.3d 1157, 1161 (9th Cir.1997)). The party seeking judgment as a matter of law must show that the verdict is not supported by "substantial evidence," that is, "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir.1994). In ruling on the motion, the court must draw all reasonable inferences in favor of the nonmoving party and may not make any credibility determinations or reweigh the evidence. Experience Hendrix LLC v. Hendrixlicensing.com Ltd., 762 F.3d 829, 842 (9th Cir. 2014). "If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. P. 50(c).

### B. Motion for New Trial

Fed. R. Civ. P. 59 provides that a court may, following a jury trial, order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed .R.Civ.P. 59(a)(1)(A). On such a motion, the court is not required to view the evidence in the light most favorable to the verdict. Experience Hendrix LLC, 762 F.3d at 842. "Instead, the district court can weigh the evidence and assess the credibility of the witnesses." Id. "Historically recognized grounds include but are not limited to 'claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir.2007) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940)). The Ninth Circuit has held that a "court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'" Id. (quoting Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 510 n. 15 (9th Cir.2000)).

## DISCUSSION

### A. Statute of Limitations

Vardanyan's misdeeds occurred over a period spanning about a decade before this suit was filed. Viasphere invoked the "discovery rule" to toll the application of the limitations period. The jury concluded that although the harm claimed by Viasphere occurred outside the pertinent limitations periods, Viasphere did not discover, and could not reasonably have discovered, that harm prior to the running of the statute of limitations. (Dkt. 215). Vardanyan argues that he is entitled to JMOL because there was insufficient evidence to support application of the discovery rule, particularly with respect to Viasphere's contract-based claims.

The discovery rule is an exception to the general rule of accrual of a claim for relief and "assumes that all conditions of accrual of the action---including harm---exist, but nevertheless postpones commencement of the limitation period until the plaintiff discovers or should have discovered all facts essential to his cause of action." Camsi IV v. Hunter Tech. Corp., 282 Cal. Rptr. 80, 86 (Cal. Ct. App. 1991) (quotations and citations omitted). That is, the applicable

limitations period does not begin to run until "plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence." Id.; see also California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1406 (9th Cir.1995) (the "'discovery rule' . . . tolls the limitations period until the plaintiff is on inquiry notice of its injury (and its wrongful cause).").

To invoke the discovery rule, a plaintiff must show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. Camsi IV, 282 Cal.Rptr. at 86. "Subjective suspicion is not required." Mortkowitz v. Texaco, Inc., 842 F. Supp. 1232, 1238 (N.D. Cal. 1994) (citing Mangini v. Aerojet-General Corp., 230 Cal. App.3d 1125, 1150, 281 Cal. Rptr. 827 (1991)). "If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation." Id. "Thus, the rule protects the plaintiff who is 'blamelessly ignorant' of his cause of action." Id.

The discovery rule has been applied to contract breaches "which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." April Enters., Inc. v. KTTV, 195 Cal. Rptr. 421, 437 (Cal. Ct. App. 1983). Such application of the rule is "not governed by the presence of deliberate concealment or a heightened level of duty to the plaintiff but by two overarching principles: '[p]laintiffs should not suffer where circumstances prevent them from knowing they have been harmed' and 'defendants should not be allowed to knowingly profit from their injuree's ignorance.'" Gryczman v. 4550 Pico Partners, Ltd., 131 Cal. Rptr.2d 680, 682 (Cal. Ct. App. 2003) (quoting April Enters., Inc., 195 Cal. Rptr. at 436).[2]

Here, Vardanyan points to evidence he says demonstrates that Viasphere either knew or should have known about its claims sooner than it did---namely, the testimony of Viasphere's

---

[2] Vardanyan argues that applying the discovery rule to contract claims would all but eviscerate the limitations period for such claims, citing Garter-Bare Co. v. Munsingwear, Inc., 723 F.2d 707, 713 (9th Cir. 1984). His reliance on Gater-Bare for that proposition is misplaced. In the cited portion of that opinion, the Ninth Circuit expressed its "grave difficulty" with the defendant's argument that notice of a contract breach necessarily constitutes notice of fraud and a duty to investigate any such fraud. Id.

5

Chief Executive Officer Anthony Moroyan that he traveled to the Technopark several times a year between 2001 and 2011; that Moroyan's office was next to the accounting area at the Technopark; and that while Vardanyan did not exactly refuse to provide documents if Moroyan asked for them, Vardanyan did not always follow through on Moroyan's requests. (Dkt. 259 at 27; Dkt. 259-3). Vardanyan argues that this evidence establishes that Viasphere clearly had notice of any wrongdoing (triggering a duty to investigate), notwithstanding that he was a Viasphere fiduciary. For its part, Viasphere points to its prior summary of evidence, previously credited by this court, indicating that Vardanyan took active steps to prevent Viasphere from discovering his misdeeds, e.g., Moroyan's and James Sumner's testimony that they did not learn about Vardanyan's conduct until February 2011 during a visit to Armenia. (Dkt. 262 at 16; Dkt. 226 at 7-8; Dkt. 232 at 3 n.1). There was ample evidence of Vardanyan's subterfuges and concealment, and the jury was free to believe or disbelieve the evidence presented. This court cannot say with any certainty that the jury could not have reasonably have found Viasphere's witnesses to be more credible than Vardanyan's, or that the jury reached a seriously erroneous result. On this issue Vardanyan's motion for JMOL is denied.

### B. Compensatory Damages

While acknowledging that damages need not be proven to the dollar, Vardanyan contends that there was no evidence presented that would allow for any reasonable damages calculation. In his view, the jury's $72,500 award is based on nothing more than speculation and guesswork. Viasphere maintains that there was sufficient evidence presented to support the jury's award.

As discussed above, Viasphere having elected rescission instead of damages, the $72,500 award actually is no longer on the table. Nevertheless, there was presented at trial substantial evidence of Vardanyan's wheeling and dealing, and the jury clearly found that Viasphere suffered damages as to each claim. (Dkt. 215). Even if the $72,500 was still in play, Moroyan testified that Vardanyan's salary at the end of his employment was $87,000 (Dkt. 259-3 at 31). The court also recalls evidence re rental monies lost pursuant to a Micro Alpha lease and Vardanyan's misappropriation of Viasphere's resources by using its employees to build his house and work at his new business, Barva. Vardanyan argues that Viasphere failed to establish he did not earn his

6

salary, disputes that any of the other items mentioned by Viasphere could be the proper measure of any damages, and that there is no evidence by which any losses could be determined with certainty.

It is unclear precisely how the jury came up with the figure that it did. And, it may well be that their calculation was an approximation. But, "[w]here the fact of damages is certain, the amount of damages need not be calculated with absolute certainty. The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." GHK Associates v. Mayer Group, Inc., 274 Cal. Rptr. 168, 179 (Cal. Ct. App. 1990). This is especially true where the defendant's wrongful acts have created the difficulty in proving the amount of loss. Id. Here, the court cannot say that there was nothing on which the jury reasonably could have based their calculations or that their award was based on speculation or guesswork. Vardanyan's motion on this issue is denied.

### C. Punitive Damages

Vardanyan contends that the jury's $1,001,713 punitive damages award must be reversed for a number of reasons, including that there was insufficient evidence of his financial condition to support the award. The court addresses that issue first and, finding it to be dispositive, does not reach Vardanyan's other arguments.[3]

Under California law, a court reviewing an award of punitive damages considers three factors: the reprehensibility of the defendant's misdeeds; the relationship between the award and plaintiff's compensatory damages; and, in view of the defendant's financial condition, the amount necessary to punish the defendant and to deter future misconduct. Adams v. Murakami, 813 P.2d 1348, 1350 (Cal. S. Ct. 1991) (citing Neal v. Farmers Ins. Exchange, 582 P.2d 980 (1978)); Kelly v. Haag, 52 Cal. Rptr.3d 126, 128 (Cal. Ct. App. 2006).

"A reviewing court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of the defendant's financial

---

[3] The court finds it unnecessary to address Vardanyan's arguments that punitive damages can be awarded only if there is an actual award of compensatory damages. Nor does the court reach his contention that the amount of punitive damages is so excessive that it violates his constitutional rights.

7

condition." Adams, 813 P.2d at 1351. That is because "the most important question is whether the amount of the punitive damages award will have deterrent effect---without being excessive." Id. Indeed, the purpose of punitive damages is to punish and deter wrongful conduct, without sending the defendant into ruin. Id. at 1350. "Even if an award is entirely reasonable in light of the other two factors . . ., the award can be so disproportionate to the defendant's ability to pay that the award is excessive for that reason alone." Id. at 1351. Thus, "an award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition." Id. at 1349. In California, this generally means that there must be evidence of the defendant's net worth, not gross assets, supporting an award of punitive damages. See Boyle v. Lorimar Productions, Inc., 13 F.3d 1357, 1361 (9th Cir. 1994) ("The rule established by lower California courts is that only net, not gross, figures are relevant."); Kelly, 52 Cal. Rptr.3d at 128 ("We explained that in examining assets without examining liabilities, or without 'evidence of the entire financial picture,' there was a risk of 'crippling or destroying the defendant.'") (citations omitted).

Plaintiffs bear the burden of presenting evidence of a defendant's financial condition. Adams, 813 P.2d at 1357. Indeed, "[i]t is inherently prejudicial to require a defendant to introduce evidence of personal finances. Doing so places a defendant in the position of bidding against himself." Id. at 1358. Observing that there are numerous means by which a plaintiff may obtain such evidence (e.g., through pretrial discovery), the California Supreme Court has stated "[w]e see no reason why it is even slightly unfair to require a plaintiff to use the procedures available." Id. at 1359.

Here, the record demonstrates that Viasphere not only failed to present any evidence of Vardanyan's net worth, Viasphere did not do what was necessary to secure such information in the event it became pertinent. At oral argument, Viasphere acknowledged that it did not pursue any pretrial discovery as to Vardanyan's financial condition. It is unclear why. Viasphere's only explanation was that Vardanyan was not being cooperative with respect to other discovery matters, so it decided not to pursue additional discovery. Viasphere acknowledged that there were remedies available to it, if it felt that Vardanyan was not providing discovery to which it believed

it was entitled. Yet Viasphere says it never asked for his financial documents and never asked the court to compel them.[4]

Instead, Viasphere's strategy was to wait for the jury's decision in the liability phase of the trial. If they found in Viasphere's favor on liability and on the issue of oppression/malice/fraud, only then would Viasphere ask Vardanyan for a financial statement. Viasphere knew---because at the Pretrial Conference, the court said the punitive damages phase would follow immediately after the liability phase---that if things went its way on liability, then the matter would proceed immediately to the punitive damages phase. However, Viasphere did not ask defendant to prepare a financial statement beforehand, in case it should become pertinent. Rather, Viasphere apparently assumed that Vardanyan would just have one. He didn't.

Complicating matters is the fact that Vardanyan was not present for the punitive damages phase of trial. Indeed, he left the proceedings and departed for Armenia after the case was submitted to the jury in the liability phase (and before it returned a verdict). His departure, which came as a surprise to the court (and apparently Viasphere as well), was announced by defense counsel in open court before the court and Viasphere's counsel. Viasphere emphasizes that it was Vardanyan who made the decision to leave. The more pertinent point, however, is that Viasphere did nothing to stop him from leaving. If Viasphere's counsel had made the request, the court would have ordered Vardanyan to stay.

So, what was amply demonstrated by the oral arguments is this: Going into the punitive damages phase of trial, Viasphere had no pretrial discovery re Vardanyan's financial condition, no financial statement, no information about his liabilities, no information about his net worth, and no

---

[4] At the motion hearing, Viasphere said that it requested discovery about Vardanyan's other businesses, that this court ultimately issued an order compelling him to produce that discovery, but that Vardanyan still refused to comply. The court has reviewed the docket in this matter. While there certainly were a number of discovery disputes brought before the court and the special master, none appear to have concerned financial information about Vardanyan's other businesses. (See Dkts. 52, 54, 75, 76, 77, 90, 91, 92, 93). The only matter that pertained to Barva concerned a dispute over Viasphere's request for production of Barva's employees' passports. (See Dkt. 77). In any event, even assuming Viasphere had moved to compel discovery re Vardanyan's other businesses and obtained a court order which was not obeyed, Viasphere acknowledged at oral argument that it did nothing to follow up on it.

defendant to examine.  There was some evidence that Vardanyan had assets:  he had a home built by Viasphere employees at no cost to him; he used Viasphere's physical resources and Viasphere employees (being paid by Viasphere) to start his own business, Barva, which had grown into a successful enterprise manufacturing and marketing expensive anti-hail machines.  Viasphere contends, without citation to the record, that Vardanyan testified that Viasphere was worth $20 million and that he owned 20% of the company (20% of $20 million = $4 million).  The court does not recall such testimony.  Nonetheless, there was some scattered testimony that would support a jury concluding that Vardanyan had assets in some amount.  But, what was absolutely missing, a fact acknowledged by Viasphere, was information about defendant's liabilities and net worth.

Viasphere argued that it was stopped from presenting other evidence pertaining to Vardanyan's financial condition.  When probed by the court at the motion hearing, however, Viasphere explained that during closing arguments, Vardanyan objected to Viasphere's references to Barva, and this court sustained the objection. (The court believes the objection was well taken, in the context of what was being argued.)  Moreover, Viasphere acknowledged at oral argument that it had no documents re Barva and had no information about Barva other than the fact that it existed.

Viasphere's only other argument is that Vardanyan had the burden to produce evidence of his inability to pay punitive damages.  As discussed above, the California Supreme Court has held otherwise.  Adams, 813 P.2d at 1357.  Viasphere presented no authority to the contrary.

On this record, the punitive damages award cannot stand because there was no evidence of Vardanyan's net worth, much less any meaningful evidence of the same.  Accordingly, Vardanyan's motion for JMOL is granted as to the punitive damages award.

Because JMOL is granted as to the punitive damages award, Fed. R. Civ. P. 50(c) requires this court to conditionally rule on Vardanyan's alternate request for a new trial, in the event this court's JMOL on the punitive damages is reversed on appeal.  Accordingly, this court conditionally grants Vardanyan's alternate request for a new trial as to punitive damages. However, inasmuch as JMOL is based on insufficiency of the evidence, this court does not believe

1  that a re-trial, if any, should present a second bite at the apple for Viasphere, who had a full and
2  fair opportunity to litigate this matter, but failed to obtain the necessary evidence the first time
3  around.

**ORDER**

Based on the foregoing, Vardanyan's motion for JMOL is denied as to the statute of limitations and compensatory damages.  That motion is granted as to the punitive damages award (and, his alternate request for a new trial on punitive damages is conditionally granted).  The clerk shall enter an amended judgment accordingly.

SO ORDERED.

Dated:   March 21, 2017

_____
HOWARD R. LLOYD
United States Magistrate Judge